J-A23010-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| ELENA BELOGOLOVSKY | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| LEONARD J. GITTER | : | No. 156 MDA 2023 |

Appeal from the Order Entered January 3, 2023
In the Court of Common Pleas of Union County Domestic Relations at
No(s):  18-90051

BEFORE:   LAZARUS, J., McLAUGHLIN, J., and STEVENS, P.J.E.[*]

MEMORANDUM PER CURIAM:                    **FILED: FEBRUARY 21, 2024**

Elena Belogolovsky (Mother) appeals, *pro se*, from the order, entered in the Court of Common Pleas of Union County, making final the court's prior interim order of support, and denying Mother's amended motion for recusal and transfer of venue.[1]   After review, we affirm and rely, in part, on the opinion authored by the Honorable Lori R. Hackenberg.

_____

[*] Former Justice specially assigned to the Superior Court.

[1] Mother has filed another appeal, docketed at 547 MDA 2023, also before this panel, which we have disposed of separately.  **See**, 547 MDA 2023 (Pa. Super. filed Feb. 21, 2024) (unpublished memorandum decision).  She has filed a third appeal, which has been disposed of by this Court.  **See Belogolovsky v. Gitter**, 940 MDA 2023 (Pa. Super. filed Feb. 21, 2024).

The parties are former spouses who separated when their child, A.G. (Child) (born June 2017) was five months old. Custody and support litigation began in 2017, when both parties were Pennsylvania residents.

Mother has a Ph.D. in behavioral sciences and management, was previously employed as a professor at Lycoming College, earning $63,000.00 per year, had previously taught at Cornell University and Vanderbilt University, and resides in Lewisburg, Pennsylvania. Father is a medical doctor, residing and practicing in Lakeland, Florida. Father has primary physical custody of Child.[2]

_____

[2] In February 2020, the parties' settlement agreement effectively granted Mother primary physical custody, and allowed Father to exercise all of his partial custody in Florida. As Child neared primary school age, both parties sought primary physical custody. In January 2021, Father filed a modification petition for primary custody, and, in March 2021, Mother filed her modification petition. The trial court granted Father's petition. On August 11, 2022, the court entered a custody order, granting the parties shared legal custody and granting Father primary physical custody. *See* Order, 8/21/22. Mother appealed and this Court remanded to the trial court to supplement its best interest analysis with consideration of the Section 5337(h) factors. *See* 23 Pa.C.S.A. § 5337(h). We also stated that "[w]ithin thirty (30) days of the date the record is remitted, the trial court shall enter a new custody order; the trial court shall delineate its reasons for the award in accordance with Section 5323(d)." *L.J.G. v. E.B.*, 1261 MDA 2022 (Pa. Super. filed June 16, 2023) (unpublished memorandum decision , at *9. Additionally, we ordered that the August 11, 2022 custody order remain in effect as a temporary order. *Id.* Mother filed a petition for allowance of appeal in the Pennsylvania Supreme Court, which was denied, *see L.J.G. v. E.B.*, 303 A.3d 704 (Pa. 2023), and she also filed an appeal in this Court seeking recusal of the trial judge, which, by judgment order, this Court quashed. *Gitter v. Belogolovsky*, 304 A.3d 761 (Pa. Super. 2023) (Table) (stating: "This case having been remanded to the trial court by way of this Court's Order and Memorandum Opinion filed June 16, 2023, and there being no merit to the argument that the trial court
*(Footnote Continued Next Page)*

The trial court determined Father's monthly net income was $52,185.58.[3] The court assigned Mother an earning capacity of $63,000.00 per year and determined Mother's monthly net income was $6,092.42, for a combined monthly net income of $58,278.00.[4] On May 4, 2022, the trial court

_____

should recuse, this appeal is hereby quashed so that the matter may return to the trial court for a determination in accordance with the June 16, 2023 remand with instructions."). Mother sought reconsideration, which was denied on October 2, 2023. On November 29, 2023, President Judge Hackenberg complied with this Court's remand order, filed a supplemental opinion, and reinstated the August 11, 2022 custody order as a final order. Mother did not appeal this order.

[3] As explained, **infra**, his included income and wages reported on Father's 2021 income tax return as well as his end-of-year distribution, which was received in March of 2022.

[4] Generally, a court determines child support using the support guidelines. **See** Pa.R.C.P. 1910.16-1 to 1910.16-7 (subsequently amended eff. Jan. 1, 2022). "[T]here is a rebuttable presumption that the guideline[-]calculated support obligation is the correct support obligation." Pa.R.C.P. 1910.16-1(d); **see also Ileiwat v. Labadi**, 233 A.3d 853, 861 (Pa. Super. 2020). Cf. Pa.R.C.P. 1910.16-1(d)(1) ("The presumption is rebutted if the trier-of-fact concludes in a written finding or states on the record that the guidelines support amount is unjust or inappropriate."). The basic child support schedule includes all cases in which the parties' combined net monthly income is $30,000 or less. **See** Pa.R.C.P. 1910.16-3. The instant case, a high-income case, is governed by Rule 1910.16-3.1. A high-income case requires the court to make the following calculation: For one child: $3,608 + 4.0% of combined monthly net income above $30,000.00.

Here, the parties' monthly net income ($58,278.00) is $28,278.00 over $30,000.00. Thus, 4.0% x $28,278.00 = $1,131.12, and $3,608.00 + $1,131.12 = **$4,739.12**. This is the basic support obligation and, thereafter, the court "shall adjust the basic child support obligation for substantial or equally shared custody as set forth in Pa.R.C.P. No. 1910.16-4(c)." Pa.R.C.P. 1910.16-4. Here, Father has primary custody, and the court made a downward adjustment accordingly. **See id.-**Explanatory Comment-2010
*(Footnote Continued Next Page)*

entered an interim order of support requiring Father pay Mother child support in the amount of $3,998.84 per month, plus arrears.[5]   Following various motions, filed by both parties, and a *de novo* hearing, the court, on January 3, 2023, made final the May 4, 2022 interim order.  Mother filed this timely appeal.  Both Mother and the trial court have complied with Pa.R.A.P. 1925.

Mother raises the following issues for our review:

_____

("The calculation in Pa.R.C.P. No. 1910.16-4(c) reduces an obligor's support obligation further if the obligor spends significantly more time with the children. The obligor will receive an additional 10% reduction in the amount of support owed at 40% parenting time, increasing incrementally to a 20% reduction at 50% parenting time.").

[5] The order provides, in relevant part:

> AND NOW, [this] 4th day of MAY, 2022, based upon the [c]ourt's determination that the Payee's monthly net income is $6,092.42 and the Payor's monthly net income is $52,185.58, it is hereby ordered that the Payor pay to the Pennsylvania State Collection and Disbursement Unit [] $3,998.84 a month payable MONTHLY as follows:  first payment due immediately.  The effective date of the order is 01/01/22.

> Arrears set at $4,165.06 as of MAY 4, 2022 are due in full IMMEDIATELY.  All terms of this [o]rder are subject to collection and/or enforcement by contempt proceedings, credit bureau reporting, tax refund offset certification, passport denial certification, driver's/professional license revocation, interception of lottery winnings, and the freeze and seize of financial assets. These enforcement/collection mechanisms will not be initiated as long as obligor does not owe overdue support.  Failure to make each payment on time and in full will cause all arrears to become subject to immediate collection by all the means listed above.

Order, 5/4/22.

1) Did the court commit an error of law and an abuse of discretion in holding Mother to an earning capacity based on a job she held over two years ago by:

   a. Failing to consider evidence that has established that Mother has made good faith, reasonable and exhaustive efforts to find suitable employment but without success;
   b. Failing to consider factors required by Pa.R.C.P. 1910.16-2(d)(4);
   c. Failing to consider the best interests of the child in making its determination?

2) Did the court commit an error of law and an abuse of discretion in failing to apply an upward deviation to the support obligation by:

   a. Failing to examine the parties' expense statements;
   b. Failing to consider reasonable needs of the Child and Factors 3, 7, and 9 of Pa.R.C.P. 1910.16-5(b)?

3) Did the court commit an error of law and an abuse of discretion in failing to deduct Mother's involuntary [deferred] retirement payment from Mother's gross income as required by Pa.R.C.P. 1910-16-2(c)(iii)?

4) Did the court commit an error of law and an abuse of discretion in calculating Father's income based on his 2021 tax return, rather than on at least a six-month average of his income as required by Pa.R.C.P. 1910.16-2(a)?

5) Did the court commit an error of law and an abuse of discretion in denying Mother reimbursement of counsel fees?

6) Did the court commit an error of law and an abuse of discretion in denying Mother's motion to transfer venue and recuse [the] Honorable Judge Lori R. Hackenberg because of the appearance of impropriety, bias, and prejudice against Mother?

Appellant's Brief, at 3-4.

Mother's first four issues challenge the court's support order.

When evaluating a support order, this Court may only reverse the trial court's determination where the order cannot be sustained on any valid ground. We will not interfere with the broad discretion afforded the trial court absent an abuse of the discretion or

- 5 -

insufficient evidence to sustain the support order. An abuse of discretion is not merely an error of judgment; [rather,] if, in reaching a conclusion, the court overrides or misapplies the law, or the judgment exercised is shown by the record to be either manifestly unreasonable or the product of partiality, prejudice, bias[,] or ill will, discretion has been abused.

**Brickus v. Dent**, 5 A.3d 1281, 1284 (Pa. Super. 2010) (citations omitted).

Furthermore, this Court

must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, this Court must defer to the trial judge who presided over the proceedings and[,] thus[,] viewed the witnesses first hand.

When the trial court sits as fact[-]finder, the weight to be assigned the testimony of the witnesses is within its exclusive province, as are credibility determinations, and the court is free to choose to believe all, part, or none of the evidence presented. This Court is not free to usurp the trial court's duty as the finder of fact.

**Mackay v. Mackay**, 984 A.2d 529, 533 (Pa. Super. 2009) (internal citations and quotation marks omitted). **See also E.R.L. v. C.K.L.**, 126 A.3d 1004, 1006 (Pa. Super. 2015) ("The principal goal in child support matters is to serve the best interests of the children through the provision of reasonable expenses.") (citation and quotation marks omitted).

Mother first argues the trial court erred by assessing her an earning capacity of $63,000.00, a salary she earned over two years prior.[6] She also contends the court did not consider the factors required by Rule 1910-16-

_____

[6] Mother's reference to "two years prior" is unclear, as she testified that her employment at Lycoming College concluded in June 2022. The *de novo* hearing was held on January 3, 2023.

2(f)(4), her diligent job search efforts, and Child's best interests. Appellant's Brief, at 9.

"Earning capacity is defined as the amount that a person realistically could earn under the circumstances, considering [her] age, health, mental and physical condition, training, and earnings history." **Woskob v. Woskob**, 843 A.2d 1247, 1251 (Pa. Super. 2004). Rule 1910.16−2(d)(4)(ii) provides the trier-of-fact shall consider the following factors in determining earning capacity:

(A) child care responsibilities and expenses;
(B) assets;
(C) residence;
(D) employment and earnings history;
(E) job skills;
(F) educational attainment;
(G) literacy;
(H) age;
(I) health;
(J) criminal record and other employment barriers;
(K) record of seeking work;
(L) local job market, including the availability of employers who are willing to hire the party;
(M) local community prevailing earnings level; and
(N) other relevant factors.

Rule 1910.16−2(d)(4)(ii)(A)-(N).

Here, the trial court assigned Mother an earning capacity of $63,000 per year. The court considered Mother's education level, her most recent employment as a professor at Lycoming College, where she earned $63,000 per year, her prior employment as a professor at Cornell University, earning $140,000.00 per year, as well as her age (40), her health, and her lack of any

medical condition affecting her ability to be gainfully employed. ***See*** N.T. *De Novo* Hearing, 1/3/23, at 36, 63. In its Rule 1925(a) Opinion, the court reasoned as follows:

> On January 3, 2023, at the time of the hearing, Mother presented a spreadsheet of her job search attempts from January 2022 through April 2022 and presented testimony that she made "a good faith effort to secure alternate like-kind employment." On the contrary, upon review [of] testimony [and] of Mother's exhibits, Mother only applied to one faculty member position at Miami Regional University on January 14, 2022. Mother did not have any previous experience in the remaining jobs she applied for, such as a business CEO position.[7] In its ruling, the [c]ourt found Mother was not forthcoming with information to assess all of the factors under Pa.R.C.P. 1910.16-2(d)(4)(ii). Mother's job search was a routine response devoid of due diligence or good faith effort. Mother lacked the qualifications for a majority of the jobs [for which] she applied.

Pa.R.A.P. 1925(a) Opinion, 3/27/23, at 7 (citations and footnotes omitted).

After our review of the record, we conclude the court did not abuse its discretion. As stated, Mother holds a doctorate degree in behavioral science and management. She was previously employed by Cornell University, from June 2012 until June 2018, earning "roughly" $140,000.00 per year. ***See*** N.T. De Novo Hearing, ***supra*** at 37. The court set Mother's earning capacity at

---

[7] At the hearing, Mother submitted a spreadsheet listing 4,941 positions that she applied for over a nine-month period (January 2022 – September 2022). ***See*** Plaintiff's Exhibit 1. The majority of these positions were in the human resources field, specifically Human Resources Manager, Human Resources Director, or Human Resources Administrator. ***See id.*** At the hearing, Mother acknowledged that she had no previous occupational experience as a human resources administrator or human resources manager, but stated that she had been "teaching human resources [] since 2010 to 2020." N.T. De Novo Hearing, ***supra*** at 40.

$63,000.00 based on her more recent employment at Lycoming College, which concluded in June 2022. *Id.* at 39.

The court also found Mother did not make a good faith effort to apply for positions for which she had appropriate credentials, instead focusing on CEO positions and starting a photography business. Mother complains the court's reasoning appears to be mostly based on conjecture. However, when addressing earning capacity, as opposed to actual income, the court must evaluate the party's income history, which, in this case, it did. The trial court considered the appropriate factors under Rule 1910.16–2(d)(4)(ii). Contrary to Mother's argument, *see* Appellant's Brief, at 12, the court did consider Mother's efforts in obtaining employment. However, after hearing and viewing the evidence presented, the court did not find Mother credible, nor did it find her efforts were in "good faith." It is not this Court's function to reweigh earning capacity evidence or determine credibility. *See Doherty v. Doherty*, 859 A.2d 811, 812 (Pa. Super. 2004). We find no abuse of discretion. *See Kimock*, *supra*.

Mother also argues that the court abused its discretion in declining to grant Mother's request for an upward deviation to Father's support obligation by failing to examine the parties' expense statements and failing to consider Child's reasonable needs. The trial court has thoroughly addressed this claim, *see* Rule 1925(a) opinion, *supra* at 8-9, and we see no need to reiterate the court's analysis. We do note that Mother refused to answer questions from Father's attorney and from the court with respect to her assets, and, further,

- 9 -

that Father has primary custodial time with Child.[8] The court properly

considered this in declining Mother's request for increased support.[9]

_____

[8] Rule 1910.16–5(b), provides as follows:

In deciding whether to deviate from the amount of support determined by the guidelines, the trier of fact shall consider:

(1) unusual needs and unusual fixed obligations;
(2) other support obligations of the parties;
(3) other income in the household;
(4) ages of the children;
(5) **the relative assets and liabilities of the parties**;
(6) medical expenses not covered by insurance;
(7) standard of living of the parties and their children;
(8) in a spousal support or alimony pendente lite case, the duration of the marriage from the date of marriage to the date of final separation; and
(9) other relevant and appropriate factors, including the best interest of the child or children.

Pa.R.C.P. 1910.16–5(b)(1)-(9). The trial court considered all the appropriate factors. The court did note, however, that Mother refused to answer questions, posed by both Father's counsel and the court, with respect to her assets. **See** N.T. De Novo Hearing, **supra**, at 78. **See also** Pa.R.C.P. 1910.16-4(c)(1) ("Substantial Physical Custody. When a child spends 40% or more of the annual overnights with the obligor, a rebuttable presumption arises that the obligor is entitled to a reduction in the basic child support obligation to reflect the obligor's increased direct spending on the child during the obligor's custodial time.").

[9] As Mother is likely aware, the trial court retains continued jurisdiction over this child support matter, **see** 23 Pa.C.S.A. § 4352(a) and Pa.R.C.P. 1910.19, and, accordingly, Mother can seek modification of support at any time if she can establish a change of circumstances. **See Bowser v. Blom**, 807 A.2d 830 (Pa. 2002); **see also McClain v. McClain**, 872 A.2d 856, 863 (Pa. Super. 2005) (when modification of child support order is sought, moving party has burden of proving by competent evidence material and substantial change of circumstances has occurred since entry of original or modified order). This would include, clearly, any change in custody. **See L.J.G. v. E.B.**, 1261 MDA 2022, **supra**.

Mother next argues the court abused its discretion in failing to deduct her "involuntary [deferred] retirement payment" from her gross income, as required by Pa.R.C.P. 1910.16-2(c)(iii). ***See*** Appellant's Brief, at 27. This claim, too, is meritless. A review of the record indicates that Mother provided no support for her claim that this was a "non-voluntary" payment. ***Id.*** ***See*** Rule 1925(a) Opinion, ***supra*** at 10 (deferred compensation plan was **voluntary** contribution made and received by Mother).

In her fourth issue, Mother argues the court erred or abused its discretion in calculating Father's income based on his 2021 tax return, rather than using a six-month average of his income as required by Pa.R.C.P. 1910.16-2(a). The rule instructs that "[m]onthly gross income is **ordinarily based upon at least a six-month average of all of a party's income**." Pa.R.C.P. 1910.16–2(a) (emphasis added). At the *de novo* hearing, the support conference officer explained that the calculation for Father's income was based on his "2021 wages and income earned during that time" but the calculation also included "the final distribution that [Father] received as a partner." N.T. *De Novo* Hearing, ***supra*** at 69. "Even though [Father] didn't receive it [until] 2022, it was money from 2021; so I did include that in addition to what was listed on his 2021 federal income tax return." ***Id.*** The trial court found this testimony credible, and stated as much on the record. ***See id.*** at 79.

At the time of the *de novo* hearing, in January 2023, the most recent year for which complete income information was available, was 2021. This

included income based on Father's 2021 wages as an employee at the Waston Clinic in Lakeland, Florida, as well as partnership income beginning in October 1, 2021, when he became a partner in the practice, and, as the support officer testified, his end-of-year distribution, which was received in March of 2022. *See id.* at 55-56. The trial court found the support conference officer's testimony credible. *Id.* at 79. Based on our review, we discern no abuse of discretion or error of law by the trial court. Mother essentially asks this Court to reweigh the evidence and reassess the credibility of Father and the support conference officer. This we cannot do. It is not the role of this Court to reweigh the evidence or make credibility determinations. *See Mackay*, 984 A.2d at 533 (holding this Court is not free to usurp trial court's duty as finder of fact; hearing officer's report and recommendation must be given fullest consideration, especially on issue of parties' credibility).

Next, Mother argues that the trial court erred or abused its discretion in denying Mother reimbursement of counsel fees. This claim, too, is meritless. *See* Rule 1925(a) Opinion, *supra* at 11-12 (finding Mother, who is self-represented, has no legal fees in support action).

Finally, Mother argues that the court erred or abused its discretion in denying her second amended motion for recusal/transfer of venue.

> The denial of a motion to recuse is preserved as an assignment of error that can be raised on appeal following the conclusion of the case. We review a trial court's decision to deny a motion to recuse for an abuse of discretion. Indeed, our review of a trial court's denial of a motion to recuse is exceptionally deferential. We extend extreme deference to a trial court's decision not to recuse. We recognize that our trial judges are honorable, fair[,] and

- 12 -

competent, and although we employ an abuse of discretion standard, we do so recognizing that the judge [her]self is best qualified to gauge [her] ability to preside impartially. Hence, a trial judge should grant the motion to recuse only if a doubt exists as to [] her ability to preside impartially or if impartiality can be reasonably questioned.

*Interest of D.R.*, 216 A.3d 286, 292 (Pa. Super. 2019).

"A party seeking recusal must assert specific grounds in support of the recusal motion before the trial judge has issued a ruling on the substantive matter before him or her." *Bowman v. Rand Spear & Associates, P.C.*, 234 A.3d 848, 862 (Pa. Super. 2020) (internal citation omitted). "Recusal is required whenever there is a substantial doubt as to the jurist's ability to preside impartially." *Id.* "However, opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Id.* at 862-63.

Here, Judge Hackenberg found she was capable of presiding impartially and, thus, denied Mother's motion for recusal. Although various exchanges between Mother and the court demonstrated frustration on the part of the court, we observe that these exchanges were precipitated primarily by Mother's interruptions or accusations toward the court. The record before us does not demonstrate any bias, prejudice, or ill will toward Mother. There is nothing to support a recusal or change of venue. *Interest of D.R.*, *supra*.

- 13 -

We affirm the trial court's support order.  We direct the parties to attach a copy of Judge Hackenberg's opinion in the event of further proceedings.[10]

Order affirmed.

Judgment Entered.

_____
Benjamin D. Kohler, Esq.
Prothonotary

Date: 02/21/2024

---

[10] It is clear from our review of the record that both Mother and Father are devoted to Child.  We presume that both are keenly aware that contentious co-parenting is not in Child's best interests.

- 14 -

IN THE COURT OF COMMON PLEAS OF THE 17TH JUDICIAL DISTRICT OF
PENNSYLVANIA, UNION COUNTY BRANCH

ELENA BELOGOLOVSKY,        )    2023 MAR 27 P 2: 22
        Plaintiff        )        DOCKET NO. 18-90051
                )
        v.        )        PACSES NO. 685117003
                )
LEONARD J. GITTER,        )        DOMESTIC RELATIONS DIVISION
        Defendant        )

**OPINION**

**Hackenberg, J. – March 27, 2023**

On March 1, 2022, Mother filed a Petition for Modification of a Support Order. On April 21, 2022, the Union County Domestic Relations Office conducted a support conference. An Interim Order was issued on May 4, 2022, directing Father to pay monthly support in the amount of $3,798.84. Mother filed a demand for hearing *De Novo* on May 24, 2022. The *De Novo* hearing was scheduled for September 6, 2022. On August 1 and 2, 2022, the Court conducted a custody trial on both parties' cross Petitions for Modification of Custody. This Court entered a Final Custody Order dated August 11, 2022, awarding Father primary custody. On August 31, 2022, Father filed a Petition for Termination of Existing Support Order. On September 1, 2022, Mother filed a Motion to Recuse Honorable Judge Lori R. Hackenberg. The Court stayed all proceedings until a hearing was held on the Motion to Recuse. The Court denied Mother's Motion to Recuse, after hearing, on September 21, 2022. On September 2, 2022, Mother filed a Petition for Modification of an Existing Support Order. On October 4, 2022, Mother filed an Amended Motion to Recuse Honorable Judge Lori R. Hackenberg. The Court denied the Amended Recusal Motion on October 5, 2022. A hearing on Mother's *De Novo* request was scheduled for October 24, 2022. Mother filed an appeal to the Superior Court on October 17,

1

2022, resulting in an Order dated October 19, 2022, staying all matters before Domestic Relations. On October 27, 2022, Father filed a Petition for Special Relief Re: Escrow of Support Pending Appeal. On or about December 5, 2022, the Superior Court Quashed Mother's appeal. Mother filed a Motion to Transfer Venue and a Motion to Dismiss Defendant's Petition for Special Relief Re: Escrow of Support Pending Appeal on December 16, 2022. On January 3, 2023, the Court held a hearing on Mother's *De Novo* request and Father's Petition for Special Relief Re: Escrow of Support Pending Appeal.

This appeal stems from this Court's Order dated January 3, 2023. Mother raises the following issues on her current appeal.

1. The Court committed an error of law and an abuse of discretion in holding Mother to an earning capacity based on a job she held over two years ago by:
    a. Failing to consider evidence that has established that Mother has made good faith, reasonable and exhaustive efforts to find suitable employment but without success;
    b. Failing to consider factors required by Pa.R.C.P. 1910.16-2(d)(4);
    c. Failing to consider the best interests of the child in making its determination.
2. The Court committed an error of law and an abuse of discretion in failing to apply an upward deviation to the support obligation by:
    a. Failing to examine parties' expense statements;
    b. Failing to consider reasonable needs of the Child and Factors 3, 7 and 9 of Pa.R.C.P. 1910.16-5(b).

2

3. The Court committed an error of law and an abuse of discretion in failing to deduct Mother's involuntary differed [sic] retirement payment from Mother's gross income as required by Pa.R.C.P. 1910.16-2(c)(iii).

4. The Court committed an error of law and an abuse of discretion in calculating Father's income based on his 2021 tax return, rather than on at least a six-month average of his income as required by Pa.R.C.P. 1910.16-2(a).

5. The Court committed an error of law and an abuse of discretion in denying Mother reimbursement of counsel fees.

6. The Court committed an error of law and an abuse of discretion in denying Mother's motion to transfer venue and recuse Honorable Judge Lori R. Hackenberg because of the appearance of impropriety, bias and prejudice against Mother as shown, *intra alia*, by:

    a. The issuance of an August 11, 2022 order [sic], which bankrupts Mother by imposing financial obligation on Mother for all expenses related to her bi-monthly custody of the Child in Florida, while disregarding the fact that Father's self-serving relocation to Florida was for his financial gain, and ignoring the striking income disparity between the parties. Despite being unemployed for over two years, Mother was ordered to bear all financial and logistical burdens for herself and the Child, while Father continues to amass wealth, earning more than one million dollars per year.

    b. The appearance of a vested interest in the outcome of the cases involving these parties, specifically, transfer of cases to Florida and the complete depletion of Mother's financial resources;

3

c. The issuance of an August 11, 2022 order that is neither realistic nor feasible for Mother, coupled with the improper modification on November 18, 2022, raising concerns about the sincerity of the Judge's credibility determination and adding further financial and logistical strain on Mother;

d. The repeated dismissal, misrepresentation and cherry picking of evidence favorable to Father and that which was unfavorable to Mother during the child custody trial on August 1-2, 2022, as well as during the hearing;

e. The application of a double standard was apparent as Judge Hackenberg hypocritically denied her eye-rolling during Mother's attorney's speech on August 1-2, 2022 as an indication of bias. Yet she arbitrarily and confidently asserted on August 5, 2022 that she observed the Mother's disdain and contempt for Father and his family during the trial on August 1-2, 2022;

f. The appearance of repeated favorism [sic] towards Father and his attorney, while failing to consider child's best interests and impairing Mother's ability to effectively litigate;

g. The Judge's denial of Mother's petition for Father's contempt on August 5, 2022, despite his admission of willfully violating shared legal custody, while encouraging Father's contempt petition against Mother for picking up the Child from school thirty minutes prior to the end of the school day;

h. The Judge's decision to hold Mather [sic] in contempt for declining to disclose information about her savings as a necessary measure to prevent Father and the trial court from further worsening Mother's financial situation, while

4

simultaneously allowing Father to not answer questions about his undisclosed retainer with his legal counsel;

    i.   The issuance of rulings that are unreasonable, legally improper and in violation of Pennsylvania Rule of Civil Procedure and case law but that favor Father.

Mother's first appellate issue argues the Court committed an error of law and an abuse of discretion in holding Mother to an earning capacity based on a job she held over two years ago by failing to consider factors required by Pa.R.C.P. 1910.16-2(d)(4) and the best interests of the child. The Pennsylvania Rules of Civil Procedure 1910.16-2(d)(4) provide:

> Pa. R.C.P. No. 1910.16-2. Support Guidelines. Calculation of Monthly Net Income.
>
> **(d)** Reduced Income or Fluctuating Earnings.
>
> **(4)** *Earning Capacity.*
>
> . . .
>
> **(A)** Earning Capacity Limitation. The trier-of-fact:
>
> **(I)** shall not impute to the party an earning capacity that exceeds the amount the party could earn from one full-time position; and
>
> **(II)** shall determine a reasonable work regimen based upon the party's relevant circumstances, including the jobs available within a particular occupation, working hours and conditions, and whether a party has exerted substantial good faith efforts to find employment.
>
> . . .
>
> **(D)** When the trier-of-fact imputes an earning capacity to a party who would incur childcare expenses if the party were employed, the trier-of-fact shall consider reasonable childcare responsibilities and expenses.

5

Pa. R.C.P. No. 1910.16-2.

At the time of the Domestic Relations Support Conference on May 4, 2022, Ms. Lemay Feese, Union County Domestic Relations Conference Officer, held Mother at an earning capacity of $63,000.00 due to her last employment. During the *De Novo* hearing on January 3, 2023, Ms. Feese testified, and Mother confirmed, Mother was held to an earning capacity of $63,000.00 because she holds a Ph.D. in behavioral sciences, was previously employed as a professor, and has no medical conditions preventing her from working. Transcript of Proceedings, Motions and *De Novo* Hearing, January 3, 2023, pg. 63, lines 11-18; pg. 36, line 5-7, 11-14. "A person's earning capacity is defined 'not as an amount which the person could theoretically earn, but as that amount which the person could realistically earn under the circumstances, considering his or her age, health, mental and physical condition and training.'" Strawn v. Strawn, 664 A.2d 129, 132 (Pa. Super. 1995), see also Myers v. Myers, 592 A.2d 339, 342 (1991). Mother's earning capacity of $63,000.00 does not exceed the amount she earned while employed as a professor at Lycoming College with a Ph.D. Mother, in good health and young age, has been willfully unemployed for two years and has failed to make good faith efforts to find employment.

To determine earning capacity, the Court must further review the factors provided in Pennsylvania Rules of Civil Procedure 1910.16-2(d)(4)(ii) to determine a party's earning capacity. The Court should consider Mother's:

> (A) child care responsibilities and expenses;
> (B) assets;
> (C) residence;
> (D) employment and earnings history;
> (E) job skills;
> (F) educational attainment;
> (G) literacy;
> (H) age;

**(I)** health;
**(J)** criminal record and other employment barriers;
**(K)** record of seeking work;
**(L)** local job market, including the availability of employers who are willing to hire the party;
**(M)** local community prevailing earnings level; and
**(N)** other relevant factors.

Pa. R.C.P. No. 1910.16-2.

On January 3, 2023, at the time of the hearing, Mother presented a spreadsheet of her job search attempts from January 2022 through April 2022 and presented testimony that she made "a good faith effort to secure alternate like-kind employment." Transcript of Proceedings, Motions and *De Novo* Hearing, January 3, 2023, pg. 26, line 14-15, 22-25. On the contrary, upon review and testimony of Mother's exhibits, Mother only applied to one faculty member position at Miami Regional University on January 14, 2022. Transcript of Proceedings, Motions and *De Novo* Hearing, January 3, 2023, pg. 39, line 4-7.[1] Mother did not have any previous experience in the remaining jobs she applied for, such as a business CEO position. Transcript of Proceedings, Motions and *De Novo* Hearing, January 3, 2023, pg. 39-41. In its ruling, the Court found Mother was not forthcoming with information to assess all of the factors under Pa.R.C.P. No. 1910.16-2(d)(4)(ii).[2] Mother's job search was a routine response devoid of due diligence or good faith effort. Mother lacked the qualifications for a majority of the jobs she applied.

The Court received testimony pertaining to Mother's expenses when opposing counsel reviewed Mother's expense statement on cross examination. Transcript of Proceedings, Motions

---

[1] Mother testified "teaching positions start in August. They never start in January... I wasn't applying for teaching jobs in January." Transcript of Proceedings, Motions and *De Novo* Hearing, January 3, 2023, pg. 41, line 16, 21-22.

[2] Lamay Feese testified Mother failed to provide the appropriate paperwork that was Court Ordered prior to the May 4, 2022, support conference. Transcript of Proceedings, Motions and *De Novo* Hearing, January 3, 2023, pg. 64-65.

and *De Novo* Hearing, January 3, 2023, pg. 42-44. Mother failed to provide testimony for any child care responsibilities, other than providing an amount in her expense statement. However, on multiple occasions, when Mother was questioned about her assets, she willfully and knowingly refused to disclose her financial resources despite the Court advising her to answer opposing counsel's cross-examination question. Transcript of Proceedings, Motions and *De Novo* Hearing, January 3, 2023, pg. 43-46). Due to her contemptuous behavior, and based on Mother's overall behaviors and statements, the Court found Mother's testimony uncredible.

On cross-examination, Mother reluctantly testified she was a professor at Cornell University from 2012 until 2018, where she earned around $140,00.00 per year, a professor at Lycoming College following her position at Cornell University through June 2020, and Mother taught online classes at Vanderbilt University. Transcript of Proceedings, Motions and *De Novo* Hearing, January 3, 2023, pg. 37-38. Mother has job skills teaching Human Resources from 2010 until 2020 and skills acquired from her Ph.D. in Behavioral Science and Management. Transcript of Proceedings, Motions and *De Novo* Hearing, January 3, 2023, pg. 36-37, 40. Mother was not forthcoming with any other favorable information regarding the factors provided for under Pa.R.C.P. No. 1910.16-2. The Court properly considered the earning capacity factors. Therefore, Mother's issue is without merit and should be dismissed.

Mother's second appellate issue argues the Court committed an error of law and an abuse of discretion in failing to apply an upward deviation to the support obligation by failing to examine parties' expense statements and failing to consider reasonable needs of the Child and Factors 3, 7 and 9 of Pa.R.C.P. 1910.16-5(b). Pennsylvania Rules of Civil Procedure 1910.16-5(a)(1) provides, "the trier-of-fact may deviate from the basic child support, spousal support, or alimony *pendente lite* obligation." Pa. R.C.P. No. 1910.16-5. It is important to note Mother's blatant refusal to

8

provide any financial resources to the Court, prevented the Court from making a quantitative comparison of the parties' relative assets and liabilities. The Court did not find Mother's testimony regarding this factor to be credible. Mother failed to prove valid reasons why an upward deviation under Pa.R.C.P. 1910.16-5(b) would be in the child's best interest. The Court ruled in Saunders v. Saunders, 908 A.2d 356, 359 (Pa. Super. 2006), "the trial court should inquire whether the non-custodial parent has sufficient assets to provide the children with appropriate housing and amenities during his or her period of partial custody. We specifically note that the term 'appropriate' does not mean equal to the environment the children enjoy while in the custodial parent's care, nor does it mean 'merely adequate.' The determination of appropriateness is left to the discretion of the trial court, upon consideration of all relevant circumstances." Saunders, supra. Mother provided testimony comparing Father's house and Father's amenities to her own, without describing her housing situation. Transcript of Proceedings, Motions and *De Novo* Hearing, January 3, 2023, pg. 74-75. Mother did not provide testimony how her living arrangements are inappropriate or inadequate for the child in Pennsylvania. The Court appropriately considered the deviation factors and its decision should be affirmed. Therefore, Mother's issue is without merit and should be dismissed.

Mother's third appellate issue argues the Court committed an error of law and an abuse of discretion in failing to deduct Mother's involuntary differed [sic] retirement payment from Mother's gross income as required by Pa.R.C.P. 1910.16-2(c)(iii). Pennsylvania Rules of Civil Procedure provides:

> **(c)** Monthly Net Income.
> **(1)** Unless these rules provide otherwise, the trier-of-fact shall deduct only the following items from monthly gross income to arrive at monthly net income:
> . . .

9

**(iii)** F.I.C.A. payments (Social Security, Medicare and Self-Employment taxes) and non-voluntary retirement payments;

Pa. R.C.P. No. 1910.16-2

In 2021, Mother received $23,785.00 paid to her as compensation from a Deferred Compensation Plan she received while working at Cornell University. Transcript of Proceedings, Motions and *De Novo* Hearing, January 3, 2023, pg. 48, lines 6-8, 9-15. Mother received this money as compensation and listed it as Wages Received in Line 1 of her 2021 Income Tax Return. Transcript of Proceedings, Motions and *De Novo* Hearing, January 3, 2023, pg. 66, lines 7-10. The Deferred Compensation Plan was a **voluntary** contribution made by Mother and received by Mother. (Emphasis added). Mother did not provide credible testimony as to why the deferred compensation should be considered a non-voluntary retirement payment. Pa.R.C.P. 1910.16-2(a) provides:

> Generally, the basic child support, spousal support, or alimony *pendente lite* obligation is based on the parties' monthly net incomes.
>
> **(a)** Monthly Gross Income. Monthly gross income is ordinarily based on at least a six-month average of a party's income. The support law, 23 Pa.C.S. § 4302, defines the term "income" and includes income from any source. The statute lists many types of income including, but not limited to:
>
> . . .
>
> **(4)** pensions and all forms of retirement.

Pa.R.C.P. 1910.16-2(a).

As permitted under Pa.R.C.P. 1910.16-2(a)(4), the deferred retirement contribution is considered income and should not be deducted. Therefore, Mother's issue is without merit and should be dismissed.

Mother's fourth appellate issue argues the Court committed an error of law and an abuse of discretion in calculating Father's income based on his 2021 tax return, rather than on at least a

10

six-month average of his income as required by Pa.R.C.P. 1910.16-2(a). Pennsylvania Rule of Civil Procedure 1910.16-2(a) provides:

> Generally, the basic child support, spousal support, or alimony *pendente lite* obligation is based on the parties' monthly net incomes.
>
> **(a) Monthly Gross Income.** Monthly gross income is **ordinarily** based on at least a six-month average of a party's income. The support law, 23 Pa.C.S. § 4302, defines the term "income" and includes income from any source.

Pa.R.C.P. 1910.16-2(a). (Emphasis added.)

At the *De Novo* hearing, Mrs. Lemay Feese testified that, although she considered Father's 2021 tax return rather than his last six months income, she used other income information of Father's to calculate the final distribution. Transcript of Proceedings, Motions and *De Novo* Hearing, January 3, 2023, pg. 68-69. The trier-of-fact is not required to use at least a six-month average of a party's income, but rather **ordinarily** uses a six-month average of a party's income. Pa.R.C.P. 1910.16-2(a). (Emphasis added.) Father provided testimony regarding the many changes to his job position and fluctuations to his income in 2021. Transcript of Proceedings, Motions and *De Novo* Hearing, January 3, 2023, pg. 52-58. In light of Father not receiving a steady, specific income, the Court reasonably considered Father's individual 2021 tax return when calculating support distribution for a more accurate, final distribution. The Court appropriately calculated Father's income. Mother's issue is without merit and should be dismissed.

Mother's fifth appellate issue argues the Court committed an error of law and an abuse of discretion in denying Mother reimbursement of counsel fees. Mother submitted an Income and Expense Statement of Plaintiff Elena Belogolovsky 05/01/2022-8/31/2022, marked at Exhibit P-5, providing an expense for "Legal Fees/Prof. Fees" in the amount of $13,000.00 per month.

See Income and Expense Statement of Plaintiff Elena Belogolovsky 05/01/2022-8/31/2022. Mother is a self-represented party in the support action. Mother does not have legal fees pertaining to the support action. Mother failed to provide a basis for her argument. Transcript of Proceedings, Motions and *De Novo* Hearing, January 3, 2023, pg. 46-48. The Court's decision was legally sound and should be affirmed. Therefore, Mother's issue is wholly without merit and should be dismissed.

Mother's sixth appellate issue is disingenuous, devoid of any merit, and was previously addressed at the hearing on September 21, 2022, and various other subsequent proceedings, including, but not limited to, the *De Novo* hearing on January 3, 2023. The Defendant filed numerous Motions To Recuse Honorable Judge Lori R. Hackenberg. This Court heard and ultimately denied Mother's Motions to Recuse. Here, Mother argues that the Honorable Judge Lori R. Hackenberg has "the appearance of impropriety, bias and prejudice against Mother." Mother failed to provide any basis to her argument. Mother's argument has no scintilla of evidence to support her claims. To the extent this Court can respond, this Court has remained fair and impartial in all proceedings in this matter. Therefore, based on the complete record, Mother's issue is devoid of any merit and should be dismissed.

For all the foregoing reasons, the appellate issues raised by Mother are without merit and this Court's decision should be Affirmed.

BY THE COURT:

LORI R. HACKENBERG, P.J.

12

cc: Darren J. Holst, Esquire, Counsel for Plaintiff
Leonard J. Gitter, natural father
Dr. Elena Belogolovsky, natural mother (pro se)
Sarah Stigerwalt-Egan, Esquire, Law Clerk
Administrative Assistant
DRO